Est., 67 Pa. Superior Ct. 362; Conwell's Est., 19 Phila. 95; Wright's App., 38 Pa. 507.

*M. B. Saul,* of *Saul, Ewing, Remick & Saul,* for appellee.—The transfer was completed and the rights of the remainderman were vested prior to the passage of the act.

The creation of the trust was not an attempted evasion of tax: Dick's Est., 30 Pa. Dist. R. 839.

The act in its terms is not retrospective.

*Edmund Bayly Seymour, Jr.,* amicus curiæ.

PER CURIAM, January 29, 1923:

The decree in this case is affirmed, at appellant's costs, on the opinion of the court below dismissing exceptions to the adjudication.

---

## Gilmore, Appellant, *v.* Gilmore et al.

*Promissory notes—Payment out of dividends of stock—Evidence — Parol agreement — Varying or destroying writing — Burden of proof.*

1. Where promissory notes are given for the purchase price of stock of a corporation which is assigned by the purchaser as collateral security for the payment of the notes, the maker cannot, by his own testimony unsupported by a second witness or proof of corroborating circumstances equal to such witness, establish a parol agreement that the notes were to be paid only out of the earnings of the corporation, and that he was not to be personally liable on them.

2. Even if such an agreement were established, the effect of it would be to destroy the notes and not to vary them, and it would therefore be invalid.

Argued January 16, 1923. Appeal, No. 227, Jan. T., 1923, by plaintiff, from decree of C. P. No. 1, Phila. Co., March T., 1922, No. 5580, dismissing bill in equity in

case of George C. Gilmore v. Robert W. Gilmore and Walter J. Gilmore. Before FRAZER, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill in equity for injunction.

The following opinion was filed by SHOEMAKER, J.:

1. In the spring of 1919, Robert W. Gilmore, defendant, purchased all the stock of Wm. Kedward Dyeing Co., consisting of 1,000 shares of the par value of $100. Thereafter Robert W. Gilmore sold to George C. Gilmore, complainant, 125 shares of this stock for $12,500, and received the promissory note of complainant dated April 8, 1919, in the amount of $12,500 payable to the order of Robert W. Gilmore on demand, with interest from date; certificate of stock of Wm. Kedward Dyeing Co., dated April 1, 1919, in the name of George C. Gilmore for 125 shares, and on the back of this certificate there was a transfer in blank of these shares duly executed by complainant under date of April 12, 1919; receipt by Robert W. Gilmore to complainant dated April 8, 1919, reciting the fact that this certificate of stock had been received by Robert W. Gilmore from complainant as collateral security for the note of complainant in the amount of $12,500, and stating "Collateral to be returned intact to G. C. Gilmore upon payment of within note"; and a receipt was delivered by Robert W. Gilmore to complainant, dated May 27, 1920, reciting the fact that Robert W. Gilmore had received from George C. Gilmore $750 "in payment of interest at 6 per cent per annum for one year on his note dated April 8, 1919, for $12,500 in connection with his purchase of stock of Wm. Kedward Dyeing Co."

2. Walter J. Gilmore, defendant, acquired from Robert W. Gilmore some stock of the Wm. Kedward Dyeing Co., and thereafter Walter J. Gilmore sold to George C. Gilmore, complainant, 75 shares of this stock for $7,500 and received the promissory note of complainant

in the amount of $7,500, payable to the order of Walter J. Gilmore on demand, dated April 8, 1919, with interest; certificate of stock of Wm. Kedward Dyeing Co. dated April 1, 1919, in the name of George C. Gilmore for 75 shares, and on the back of this certificate the transfer of these shares in blank was duly executed by complainant under date of April 12, 1919; receipt delivered by Walter J. Gilmore to complainant dated April 8, 1919, reciting the fact that this certificate of stock had been received by Walter J. Gilmore from complainant as collateral security for the note of complainant in the amount of $7,500 and stating "collateral to be returned intact to G. C. Gilmore upon payment of the within note"; and receipt delivered by Walter J. Gilmore to complainant dated May 27, 1920, and reciting the fact that Walter J. Gilmore had received $450 from George C. Gilmore "in payment of interest at 6% per annum for one year on his note dated April 8, 1919, for $7,500 in connection with his purchase of stock of Wm. Kedward Dyeing Co."

3. The testimony of the complainant, to the effect that the notes were given by him in reliance upon the representations of defendants (which was the inducement for their execution), that they were to be paid out of the profits accruing to his stock in the Wm. Kedward Dyeing Company, and no liability outside of such method of payment was to be assumed by the plaintiff, was not corroborated by the evidence of any other witness, or by such circumstances as were equivalent thereto.

4. That on May 27, 1920, the amount of a dividend of $750 paid by the Wm. Kedward Dyeing Company, was credited on the note to R. W. Gilmore, dated April 8, 1919.

5. That on May 27, 1920, the amount of a dividend of $450 paid by the Wm. Kedward Dyeing Company was credited on the note to W. J. Gilmore, dated April 8, 1919,

6. That on April 14, 1919, W. J. Gilmore, one of the defendants, agreed to give a credit of $1,000 to the plaintiff on plaintiff's note dated April 8, 1919, for $7,500.

7. That W. J. Gilmore, as agent for R. W. Gilmore, agreed to give plaintiff a credit of $1,500 on the note of plaintiff held by R. W. Gilmore for $12,500, dated April 8, 1919, and that R. W. Gilmore authorized or ratified the act of his agent, W. J. Gilmore.

8. That the consideration for such credits was the interest transferred by the plaintiff to the Wm. Kedward Dyeing Company, or the parties holding the stock therein, of three-fourths of plaintiff's interest in the Clinton Company, owned by plaintiff.

### DISCUSSION.

There is no doubt but that the two promissory notes given by plaintiff to the defendants, and the assignments of the stock as collateral security for their payment, establish a prima facie case for the defendants. To overcome the presumption raised, the plaintiff has attempted to show by parol evidence that the execution of the papers was induced by the representations of the defendants that the notes should not be payable on demand, as expressed thereon, but should be paid out of the profits of the Kedward Dyeing Company, and out of them only, and consequently no personal liability of the plaintiff should exist.

To sustain this contention, if permitted, it is necessary for the plaintiff to show by evidence which is clear, precise and indubitable, that such representations were the inducing cause for the execution of the notes, and this evidence must be by two witnesses, or by one witness and corroborating circumstances equal to a witness, because the defendants deny that any such agreement was made.

The first question, therefore, is, Was there sufficient evidence to justify a chancellor in sustaining the plaintiff's contention? It is clear that no representations were made at the time of the execution of the papers,

At most, it was testified that during the conversations which took place prior to the execution of the papers, between the plaintiff and defendant, Robert W. Gilmore, the latter made the representations, and that Walter J. Gilmore was the agent of Robert, and knew of these representations and made his advances on the same basis. The plaintiff testified to the statement having been made by Robert, and that it was the inducing cause for the execution of the papers. Charles Gilmore's testimony does not establish any such representations to plaintiff by defendants, but gives his general understanding as to what the arrangement was as to both himself and plaintiff. This is based principally by both plaintiff and Charles Gilmore upon the fact that Robert and Walter had money, and plaintiff and Charles had little, and that obligations for the money given could not be met by them, and therefore, they would have to be paid out of the profits of the company. This may be a reason upon which to found a conclusion such as plaintiff reached, but it is not, in our judgment, sufficient to supply the additional witness required, although no demand was made by defendants upon plaintiff for the payment of the notes, or interest thereon, for almost three years.

On these grounds, we think the bill should be dismissed.

The remaining objection, that, even if proved, it would not be a reformation of the notes, based on fraud, accident or mistake, which was not alleged in the bill, nor upon the breach of a promise which formed the inducing cause for the giving of the notes, raises the question as to whether the allegation, if sustained, would destroy the notes, or only confine their payment to a specific fund. If the contention of plaintiff is sustained, the only way the notes can be paid is out of the profits of the Wm. Kedward Dyeing Company. If there were no profits, the defendants could not recover their money. Does this destroy the notes? It is contended by defendants that the limitation of the payment of notes to a special

fund, can only be supported where there is such a fund, and the obligor has control over it.  On the other hand, the plaintiff contends that as defendants had the money, and the plaintiff the experience, the joint venture was made upon the basis of each contributing what he had, trusting to the success of the business for a return for their contributions.  Otherwise, if a failure, plaintiff would be individually liable for the amount of the notes he gave, and would also lose his services.  It appears, however, that each member of the corporation received a weekly salary of fifty dollars, which, it may be assumed, was for the services they rendered.  Upon the authority of Second National Bank of Reading v. Yeager, 268 Pa. 167, we are of the opinion that the defendants' view should be adopted, upon the ground that the agreement alleged would, if sustained, destroy the notes, and not vary them.

We fail to see, however, why plaintiff was not allowed the credit of $1,500 on Robert's note, and $1,000 on Walter's note for the amount admitted to be due him for his interest in the Clinton Company, sold to the other parties, and which was agreed to by the writings of April 14 and 21, 1919.  This should be credited on the notes as of the date when due, and the interest credited by the dividend of May 27, 1920, applied to interest on the amount thus reduced, to that date, and the balance to principal.

### CONCLUSIONS OF LAW.

1. The plaintiff has failed to prove the alleged agreement with the defendants that the promissory notes dated April 8, 1919, given by plaintiff to defendant should be paid only out of the earnings of the Wm. Kedward Dyeing Company.

2. The agreement alleged by the plaintiff makes the payment of the said notes subject to a condition over which none of the parties had control, and is, therefore,

not such an agreement as can be proved to alter or modify plaintiff's liability on his notes.

3. Plaintiff did not aver fraud, accident or mistake in the giving of the said promissory notes, nor that plaintiff was induced to execute or deliver the promissory notes in reliance upon any contemporaneous oral promise, nor has he proved it.

4. Plaintiff should be credited on the note given by him to Robert W. Gilmore, defendant, for $12,500, dated April 8, 1919, with the sum of $1,500, as agreed and evidenced by the writings dated April 14 and 21, 1919; the credit to be as of April 21, 1919.

5. Plaintiff should be credited on the note given by him to Walter J. Gilmore, defendant, for $7,500, dated April 8, 1919, with the sum of $1,000, as agreed to and evidenced by the writings dated April 14 and 21, 1919; the credit to be as of April 21, 1919.

### DECREE.

June 29, 1922, it is ordered and decreed, that:

1. Plaintiff is credited on the note given by him to Robert W. Gilmore, defendant, for $12,500, dated April 8, 1919, with the sum of $1,500, as agreed and evidenced by the writings dated April 14 and 21, 1919; the credit to be as of April 21, 1919.

2. Plaintiff is credited on the note given by him to Walter J. Gilmore, defendant, for $7,500, dated April 8, 1919, with the sum of $1,000, as agreed and evidenced by the writings dated April 14 and 21, 1919; the credit to be as of April 21, 1919.

3. Upon the defendants complying with the first and second paragraphs of the decree, the bill will be dismissed.

4. Each party shall pay his own costs.

Plaintiff appealed.

*Error assigned,* inter alia, was decree, quoting it.

*Edmund W. Kirby,* for appellant.—An agreement to look to corporate profits for payment is valid and enforceable: Alexander v. Righter, 240 Pa. 22; Keller v. Cohen, 217 Pa. 522.

Enforcement of the agreement for payment does not destroy the obligation, on the contrary, the demand of payment contrary to the agreement constitutes fraud: Gandy v. Weckerly, 220 Pa. 285.

*Joseph R. Embery,* for appellees, cited: Second Nat. Bank of Reading v. Yeager, 268 Pa. 167.

PER CURIAM, January 29, 1923:

The decree in this case is affirmed on the facts found and the legal conclusions reached by the learned judge of the court below. Costs to be paid by appellant.

---

## Sieber, Appellant, *v.* Russ Bros. Ice Cream Co.

*Negligence—Automobiles—Truck—Ownership—Presumption — Use for defendant's business—Pleasure cars—Nonsuit.*

1. Where, in an action for death resulting from the negligent operation of a delivery truck, it is admitted that the truck belonged to defendant engaged in the ice cream business, and it is proved that at the time of the accident the truck bore defendant's name and was loaded with ice cream cans, the evidence is sufficient to warrant the presumption that the truck was driven by defendant's servant acting in the line of his duty.

2. In such case, the burden is on defendant to produce evidence contradicting the presumption thus raised, and if he fails to do so, it is reversible error for the court to enter a nonsuit.

3. The rule is different in regard to pleasure cars, inasmuch as the mere fact that the defendant is the owner of the car furnishes no foundation for his liability.

Argued January 4, 1923. Appeal, No. 8, May T., 1923, by plaintiff, from order of C. P. Dauphin Co., Jan. T., 1921, No. 491, refusing to take off nonsuit, in case of